UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| RICHARD ALMEIDA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:11-cv-00061-GMN-VCF |
| vs. | ) | |
| | ) | **ORDER** |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is Petitioner Richard Almeida's Second Amended Motion to Amend Naturalization Certificate to Reflect Correct Birthdate. (ECF No. 29.)  The U.S. Citizenship and Immigration Services has responded and filed a Motion for Summary Judgment. (ECF No. 33, 34.)  Petitioner has opposed the cross-motion and Respondents have replied.  For the reasons discussed below, Petitioner's Motion to Amend is DENIED and Respondents' cross-motion for Summary Judgment is DENIED as moot.

**I.    BACKGROUND**

Petitioner Richard Almeida seeks to amend his Certificate of Naturalization on the grounds that the certificate reflects an incorrect birthdate.

Mr. Almeida was born in the Pakistani countryside and not in a hospital. (ECF No. 29, at 3.) Thus, he was not issued a birth certificate until he began to attend formal schooling. (*Id.*) Mr. Almeida alleges that at some point during his early education, a clerical error was made and his birthdate was changed from December 22, 1944 to December 22, 1948. (*Id.*)  Neither Mr. Almeida nor his mother noticed the discrepancy; Mr. Almeida assumed the 1948 date to be true and began relying on that date as his birthdate. (*Id.*)

On January 6, 1979, Mr. Almeida immigrated to the United States. (ECF No. 39, Ex. C.

at 3.) On May 17 of that year, he married Margaret Hill, (*Id.* at 9), and on May 30 filed an application for lawful permanent resident status as the spouse of a citizen of the United States. (*Id.* at 3-4.) On that application, Mr. Almeida listed his birth year as 1948. (*Id.* at 1.) Immigration and Naturalization Services ("INS") approved the application on July 30, 1979. (*Id.*) Less than three months later on October 16, 1979, Mr. Almeida and Ms. Hill divorced. (ECF No. 39, Ex. D. at 3.) In 1986, Mr. Almeida filed an application for Naturalization and listed 1948 as his birth year on the application and accompanying documentation. (*Id.*) On July 3, 1986, Mr. Almeida was naturalized in Las Vegas, Nevada. (ECF No. 39, Ex. E. at 8.) This Court issued a Certificate of Naturalization to Mr. Almeida with his birthdate listed as December 22, 1948. (ECF No. 29, Ex. B. at 5.)

At a family reunion in 2007, Mr. Almeida's sister, Margaret D'Souza, saw his passport and informed him that the birthdate listed on his passport was incorrect. (ECF No. 29 at 5.) She reasoned that because she was younger and born in 1946, based on their age difference, he could not have been born in 1948. (*Id.*) Mr. Almeida requested a copy of his birth certificate from Pakistan. (*Id.*) He also filed a request with the United States Citizenship and Immigration Services (UCSIS) to amend his Certificate of Naturalization to reflect a 1944 birthdate. (*Id.*) That request was denied because the birthdate of 1948 indicated on the Certificate of Naturalization was "in fact, the name/date of birth provided by [Mr. Almeida] at the time of [his] naturalization.[1]" (ECF No. 34, Ex. A).

Two years after the denial, on January 11, 2011, Mr. Almeida petitioned this Court to direct Respondents to amend the Certificate of Naturalization. (ECF No. 1.) To support his petition, Mr. Almeida has filed several documents as evidence of his true birthdate, specifically: (1) a copy of a document issued by the City District Government Karachi Health

---

[1] UCSIS may direct the change only if a clerical error was made in preparing the certificate or if the date of birth did not conform to that reflected on the original application. 8 C.F.R. § 388.5.

Department, which Mr. Almeida characterizes as a birth certificate; (2) two Certificates of Baptism extracted from the Parochial Register of St. Patrick's Cathedral in Karachi, Pakistan; (3) affidavits from his siblings Faiza Dhanani, Margaret D'Souza, Peter Desmond Joseph Almeida, and John Carl Ernest Almeida. (ECF No. 29 and attached exhibits.)  Lastly, Mr. Almeida attached a "copy of the book his family signed on the day of his baptism" as a Supplemental Exhibit (ECF No. 36) to his Response to Respondent's Cross Motion for Summary Judgment. (ECF No. 35.)

## II.     DISCUSSION

The district court which originally issued the naturalization certificate can order the amendment of a naturalization certificate issued prior to 1990 when the alleged error is not clerical. *Kouanchao v. U.S. Citizenship & Immigration Servs.*, 358 F.Supp.2d 840, 843 (D. Minn. 2005) (mem. of law & order denying report and recommendation); *In re Lee*, No. 3:06-mc-80150-MJJ, 2007 WL 926501, *2 (N.D. Cal. March 26, 2007) (unreported).  As this Court has jurisdiction to amend the certificate, the Court turns its analysis to the evidence at hand.

### a.     Admissibility of Evidence

As a preliminary matter, Respondent objects to the Court's consideration of several of Petitioner's exhibits on the basis that Petitioner has not authenticated the exhibits and thus the exhibits are inadmissible.

An out-of-court statement offered in evidence to prove the truth of the matter asserted is hearsay and is generally inadmissible. Fed. R. Evid. 801, 802.  However, "a record of a birth, death, or marriage, if reported to a public office in accordance with a legal duty," is "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." Fed. R. Evid.  803(9).  Also, a statement of fact contained in a certificate of marriage, baptism, and similar ceremonies is not excluded by the rule against hearsay where it is:

/ / /

>   (A) made by a person who is authorized by a religious organization or by law to perform the act certified;
>   (B) attesting that the person performed a marriage or similar ceremony or administered a sacrament; and
>   (C) purporting to have been issued at the time of the act or within a reasonable time after it.

Fed. R. Evid. 803(12).  Likewise, statements in ancient documents that are "at least 20 years old and whose authenticity is established" are similarly not excluded. Fed. R. Evid. 803(16).

At question in this case are: (1) a copy of a document issued by the City District Government Karachi Health Department, which Mr. Almeida characterizes as a birth certificate, and (2) two Certificates of Baptism extracted from the Parochial Register of St. Patrick's Cathedral in Karachi, Pakistan, and a "copy of the book his family signed on the day of his baptism."[2]

First, Mr. Almeida has not properly authenticated the document characterized as a birth certificate from Karachi, Pakistan.  As a foreign public document, the document could be self-authenticating if accompanied "by a final certification that certifies the genuineness of the signature and official position of the signer or attester — or of any foreign official whose certificate of genuineness relates to the signature or attestation or is in a chain of certificates of genuineness relating to the signature or attestation." Fed. R. Evid. 902(3).  "The certification may be made by a secretary of a United States embassy or legation; by a consul general, vice consul, or consular agent of the United States; or by a diplomatic or consular official of the foreign country assigned or accredited to the United States." Fed. R. Evid. 902(3).  However, here, the document is not accompanied by any final certification.  Thus, the document is not self-authenticating.

---

[2] Respondents object to this copy of the book for several reasons: (1) it was filed after the parties submitted their motions and after Mr. Almeida's response; (2) it was filed in violation of Special Order 109 of the United States District Court for the District of Nevada; (3) it was filed under a different case name; and (4) it has not been authenticated or alternatively, is unreliable.

Second, Mr. Almeida has not properly authenticated the baptismal records or the "copy of the book his family signed on the day of his baptism." As foreign records of a regularly conducted activity, these records must be accompanied by a "certification of the custodian or another qualified person" that is "signed in a manner that, if falsely made, would subject the maker to a criminal penalty in the country where the certification is signed." Fed. R. Evid. 902(12). Here, while Mr. Almeida offers two notarized copies of the baptism certificate and a photo of the book, the documents are not accompanied by any certification by the custodian of records and it is unclear whether the Parish Priest is the custodian of the church records. Thus, the documents have not been authenticated and are inadmissible.

### b.  Clear and Convincing Evidence Standard

Assuming *arguendo* that the documents had been properly authenticated and were admissible, they still do not assist Mr. Almeida to meet his burden of proof because of the number of factual inconsistencies and implausibility.

The petitioner bears the heavy burden to demonstrate the true birthdate. *Hussain v. U.S. Citizenship & Immigration Servs.*, 541 F.Supp.2d 1082, 1085 (D. Minn. 2008). While there are divergent views on the standard of proof the petitioner must meet, "most cases suggest that a petitioner must offer 'unequivocal evidence' of his true date of birth to obtain an amended certificate," while "at least one case suggests that 'clear and convincing' evidence is necessary." *Id.* At a minimum, the petitioner must show: "(1) there is clear and convincing evidence that the birth date on the certificate of naturalization is wrong; (2) there is little or no evidence that the petitioner acted fraudulently or in bad faith either when he or she initially provided the incorrect birth date to immigration authorities or when he or she later sought to amend the certificate of naturalization; and (3) there is reliable evidence supporting the birth date that the petitioner now alleges is correct." *Id.* at 1086.

Mr. Almeida's sole argument is that the baptismal record, simply by existing, proves he

was born in 1944 and not 1948.  While it is true that someone cannot be baptized before they are born, Mr. Almeida's baptismal record highlights a few areas of concern.  Most concerning is that while the Certificate of Baptism was issued by St. Patrick's Church, Mr. Almeida's own testimony states that he "did everything in St. Lawrence's [church] [be]cause it was about four houses from" his home. (ECF No. 34, Ex. F, Almeida Dep., 17:14-17, Nov. 8, 2011.) Therefore, it is unclear why St. Patrick's Church would issue a baptism certificate for Mr. Almeida if he was baptized at St. Lawrence's Church.  Alternatively, if the Court relied on the baptism certificate, then it appears that Mr. Almeida is mistaken about the location of his baptism and confirmation or the baptism record is incorrect.  This inconsistency cannot support a clear and convincing evidentiary burden.

Further, the other evidence and testimony does not present a clear cogent and definitive presentation of the facts.  In 1979, Mr. Almeida's original application for lawful permanent resident status included the birth years of his brother Peter (1942) and his sister Margaret (1946), both of whom would have been older than he based upon his knowledge that his birthday was in 1948.  However, now Mr. Almeida claims that he had no knowledge that his sister was in fact two years younger than him.  While children may not understand the significance of birth years, children fully understand whether their sibling is younger or older than them.  Therefore, it is implausible that Mr. Almeida did not recognize that his sister was younger than he or that his birth year was incorrect until being told so by his sister in 2007. Next, Mr. Almeida claims that the clerical error occurred during his early school years and neither Mr. Almeida nor his mother knew that the error occurred.  However, Mr. Almeida offers no explanation as to why his school records became the official basis for incorrect information on all future legal documents, including Mr. Almeida's Pakistani Passport. (ECF No. 34, Ex. 5, Almeida Dep. 32:15-21.)  Again, it is implausible that the Pakistani Government would rely on school records, rather than a government issued birth certificate or its equivalent

upon which the school record was based, to give Mr. Almeida a passport, an official legal document certifying Mr. Almeida's identity and citizenship.

Mr. Almeida also offers affidavits from his older and younger[3] siblings attesting to his birthdate. Mr. Almeida's older siblings John (born June 17, 1941) and Peter (born September 30, 1943) could attest to Mr. Almeida's birthdate as they theoretically could have actual knowledge of the fact. However, his younger siblings Margaret D'Souza (born in 1946) and Faiza Dhanani (born in the 1950s)[4] cannot as they could not have personal knowledge of the date of his birth because they were not born at the time. As to all the siblings' attestations, the affidavits do not contain statements as to how the siblings have knowledge of Mr. Almeida's birthdate, either via the baptism certificate, general family knowledge and belief, or some other basis. Therefore, this testimony cannot support a clear and convincing evidentiary burden.

Mr. Almeida offers a document he characterizes as a birth certificate. Even assuming this is an actual birth certificate, it is unclear whether the certificate is based on the affidavit signed by Mr. Almeida's sister, Faiza Dhanani, or whether the affidavit is based on the certificate. Ms. Dhanani requested the certificate, both the certificate and affidavit are dated the same, and Ms. Dhanani's signature appears on both the certificate and affidavit. If the certificate is based on the affidavit, it is incorrect because as discussed above, if Ms. Dhanani is younger than Mr. Almeida, she cannot attest to his birthdate. As the basis of the information on the certificate is unclear, the document cannot support a clear and convincing evidentiary burden.

Relying exclusively on the quote, "The record here does not reveal any significant signs of fraudulent activity on the part of the Petitioner," Mr. Almeida incorrectly argues that "the US Attorney General's Office (AG), by its own admission has conceded that this case is absent of

---

[3] Assuming for the sake of argument that Mr. Almeida was born in 1944.
[4] Formerly Elizabeth Almeida

fraud or bad faith intention." (ECF No. 29 at 9.)  In fact, that quote was contained in a citing parenthetical elucidating the legal standard. (ECF No. 11 at 7.)  Therefore, no concession was made.  Respondent argues the record does indicate potential fraud either with the current request or on the original lawful permanent resident and naturalization applications.  Respondent contends that because Mr. Almeida could recite the birthdates of all his siblings during his deposition, it does not logically follow that he did not recognize his sister was younger than him or that his birth year was incorrect until 2007.  While peculiar, this discrepancy by itself does not amount to evidence of fraud or bad faith.

Simply, the Court would be required to assume a number of facts to make a finding that Mr. Almeida's birthdate of 1948 is incorrect.  The Court sympathizes with Mr. Almeida's effort to accurately reflect what may be his birthdate.  However, he has simply not presented clear and convincing evidence  that he was born in 1944 and not 1948, .  Therefore, Mr. Almeida has not met his burden.  The motion is denied.

### III.     CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner Richard Almeida's Second Amended Motion to Amend Naturalization Certificate to Reflect Correct Birthdate (ECF No. 29) is **DENIED**.

**IT IS FURTHER ORDERED** that Respondents' Cross-motion for Summary Judgment (ECF No. 34) is **DENIED as moot**.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this 13th day of February, 2013.

_____
Gloria M. Navarro
United States District Judge